IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 18-03123 (ESL)

PUNTAS ASSOCIATES LLC                                     CHAPTER 7

     Debtor

OPINION AND ORDER

This case is before the court upon the *Motion to set aside Notice of Abandonment and for Reconsideration Under FRBP 9024* filed by the chapter 7 Trustee, Noreen Wiscovitch-Rentas ( the "Trustee") (Docket No. 28); the *Opposition to Trustee's Motion to set aside Notice of Abandonment and for Reconsideration Under FRBP 9024* filed by Puntas Associates LLC ("Puntas" or the "Debtor") (Docket No. 45); and *Opposition to the Trustee's Motion to Set Aside Notice of Abandonment and for Reconsideration under Rule 9024 and Memorandum of Law in Support Thereof* filed by Carlos M. Muñiz Ruiz, Edna O. Muñiz Ruiz, and Adalid Muñiz Ruiz, individually and as Heirs of the Estate of Adalid Muñiz Aviles, referred to collectively as "Heirs of the Estate of Adalid Muñiz Aviles" (the "Muñiz Heirs") (Docket No. 59).

Relevant Procedural History

On May 31, 2018, the Debtor, Puntas Associates LLC filed a Chapter 7 voluntary petition. On schedule A/B, the Debtor listed two real estate properties. On part 9, line 55.1, the Debtor listed Parcel G with a surface area of 13,036.247 square meters located at Barrio Puntas, Rincón and listed the "current value of debtor's interest" in the amount of $75,000.00. On line 55.2 the Debtor scheduled Parcel 1 with a surface area of 3,933.247 square meters located at Barrio Puntas, Rincón and listed the "current value of debtor's interest" in the amount of $23,000.00. Furthermore, on line 55.3 the Debtor scheduled Parcel 2 with a surface area of 990.871 square meters located at Barrio Puntas, Rincón and listed the "current value of debtor's interest" in the amount of $5,700.00. Pages 8-9. On Schedule D the Debtor listed Adalid Muñiz Aviles & Carlos Muñiz Rivera as mortgage lien holders over Parcel G included in Schedule A/B, with a claim in the

amount of $4,036,323.00. Page 11. A collection of monies and foreclosure action in the United States District Court of Puerto Rico was listed in the Statement of Financial Affairs for Non-Individuals, Part 3, line 7.1. Page 18.

On July 22, 2018, the Chapter 7 Trustee, Noreen Wiscovitch Rentas, filed a N*otice for Assets and Requests for Claims Bar Date* (Docket No. 9). On the same date, the Trustee filed a *Notice of Abandonment of Property and Request for Clerk to Notice* where the Trustee stated her intention to abandon the property described as "[l]and: Parcel G with a surface area of 13,036.247 square meters located at Bo. Puntas, Rincón" (Docket No. 10). On July 23, 2018, the Clerk of the Court issued a *Notice of Need to File Proof of Claim Due to Recovery of Assets* informing creditors to file a proof of claim by October 22, 2018, to participate in any distribution (Docket No. 11).

On November 1, 2018, the Trustee filed a *Notice of Private Sale of Estate's Interest in Property,* indicating that she had received a written offer to purchase the lot of land located at Bo. Puntas, Rincón, Parcel 2 with a surface area of 990.871 square meters square meters for the amount of $145,000.00.

On November 11, 2018, the Trustee filed her *Motion to Set Aside Notice of Abandonment and for Reconsideration Under FRBP 9024* (Docket No. 28). The Trustee explained that her determination "to abandon the estate property was triggered because said property had no value and/or was burdensome to the estate, as per Debtor's schedules, testimony and the evidence presented in proof of claim No.4 ("POC 4") filed by Carlos M. Muñiz Ruiz, Edna O. Muñiz Ruiz and Adaliz Muñiz Aviles ("Defendant/Creditors"), which determines that as of July 22, 2018, the Property was encumbered by virtue of the pre-petition presentment of a secured mortgage in the amount of $4,036,323.00." "As per the evidence included in the Proof of Claim, such secured mortgage debt was presented at the Puerto Rico Property Registry Office (the "Registry"), on May 29, 2007, in deed No. 3 by Notary Public Andres Javier Ramos Camara (the "Notary"). The Proof of Claim included a Registrar Certification issued on July 11, 2016, which evinces that the Mortgage was presented on May 29, 2007." However, the Registar, Mr. Gilden S. Caro Pérez, issued a notice for correction on July 31, 2018, which expired on October 1, 2018, without any corrective action by the notary. Therefore, the presentation made on May 29, 2007, lost its seat in the Registry. The Trustee alleged that, consequently, at the filing of the petition there was no mortgage recorded at the Property Registry. Furthermore, on October 2, 2018, the notary withdrew the mortgage deed and claimed a credit for the government stamps paid upon presentation. "If the Trustee would have been alerted of the Registrar's corrective notification, the Property would not

have been abandoned. The Trustee needs to reincorporate the property back into the bankruptcy estate, since it will result on a quantifiable benefit to all creditors."

The Trustee requested the court to allow the withdrawal of the *Notice of Abandonment* or that its effect be set aside considering that the Registrar notified a corrective action nine (9) days after the filing of the *Notice*; and the deed's presentation expired by operation of law and, additionally, the documents were withdrawn. Although the Trustee recognized the general rule that abandonment is irrevocable, she argued that some courts had found that upon "appropriate circumstances" an abandonment may be set aside. For example, "appropriate circumstances" have been found where the trustee is given false or incomplete information about the asset by the debtor; a debtor fails to list an asset altogether; or where the trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will result in revocation of the abandonment. "In this case, the Trustee's determination was driven by the actual liens in the Property Registry upon abandonment. Had the Trustee known of the corrective entry by the Registrar entered nine days after the filing of the notice, the trustee would not have abandoned the Property. The inadvertency of the Registry's reality after the notice of the abandonment was filed warrants that the court enters an order setting aside the abandonment pursuant to FRBP 9024."

The Trustee argued that she entered the *Notice of Abandonment* because on July 22nd, 2018, the property had no benefit to the bankruptcy estate. However, the Notice of the Registrar on July 31st, 2018, issuing a corrective notification was made when abandonment was not final; but the Trustee wasn't aware of it. "If the Trustee had become aware that the mortgage was qualified at the Registry, the Trustee would have waited for the corrections to be made before abandoning the asset. These unusual facts are an inadvertence which warrants a relief in the purview of Rule 9024." Furthermore, the Trustee argues that the automatic stay never ceases to exist notwithstanding the abandonment and that "…setting aside the Notice of Abandonment and having the property under the Bankruptcy Estate will benefit the bankruptcy estate and therefore all the creditors.

On November 13, 2018, the Debtor filed a *Motion to Convert Case from Chapter 7 to Chapter 11* pursuant to Section 706(a) of the Bankruptcy Code (Docket No. 33). Aditionally, on December 3rd, 2018, the Debtor filed its *Opposition to Trustee's Motion to Set Aside Notice of Abandonment and for Reconsideration under FRBP 9024* (Docket No. 45). The Debtor alleged that abandonment was a form of property administration; that "it is well settled that if the chapter 7 trustee abandons an asset of the estate, the asset "reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." Referencing 5 Collier on Bankruptcy, 15th ed. rev.

¶ 554.02[3]. "The limited circumstances in which abandonment has been revoked do not resemble the facts in this case. Debtor did not give the Trustee false or incomplete information concerning Debtor's assets. The assets were detailed in the bankruptcy schedules." "Furthermore, the Trustee's abandonment was not a result of mistake or inadvertence. The Trustee acted intelligently with the information available at the time of the abandonment." "Besides, Debtor would suffer undue prejudice if the abandonment were revoked as Debtor stands on an advantageous position now, to administer the unencumbered properties for the benefit of restructuring its operations and rehabilitating its enterprise, for the benefit of the Debtor and creditors alike. Debtor is confident that through chapter 11 creditors stand to receive more than under a chapter 7 scenario."

The Debtor argued that the trustee was not "inadvertent", as alleged, and that instead the "…Trustee acted in her sound business judgment and diligently, not inadvertently, abandoning Parcel G according to her fiduciary duties to the estate. The fact that there may now be some additional value in the Debtor's property does not provide sufficient grounds under Rule 60(b)(1) to revoke the intentional abandonment."

On November 30, 2018, the Trustee filed her *Opposition to Debtor's Request for Conversion* (Docket No. 41). "The Debtor is a passive corporation with no business activity and the motion does not include any resolution or evidence attesting to the authority to convert the case. Furthermore, there is no evidence of authority to manage Debtor's assets and property at this point. The only person with legal standing to manage the assets of the estate is the Trustee. The only reason that the Debtor states in order to request the conversion, is a general allegation that its wishes to reorganize for its own benefit and to all creditors. However, as per the petition signed, Debtor's representative own testimony on the meeting of creditors, and the events on the District Court's foreclosure proceeding, the Debtor's true intention for years, was to liquidate the inoperable corporation; thereby resulting in this Chapter 7 case." "A debtor under a Chapter 11, must have a reasonable likelihood of rehabilitation in order to be considered a good faith debtor. "Chapter 11 is designed to offer greater recovery for creditors and equity owners than liquidation in a Chapter 7 case by providing a means by which financially distressed businesses or individuals may restructure their finances by obtaining confirmation of a plan which provides either a continuation of the business, or retention or orderly sale of assets, and exiting bankruptcy relieved of burdensome debts and obligations." citing In re Jimenez, No. 18-04070 (ESL), 2018 Bankr. LEXIS 3507, at *1 (Bankr. D.P.R. Nov. 7, 2018). The Trustee alleged that the Debtor was not a profitable business; had accumulated more than $5 million in debt; had under valuated the assets

of the estate; and had filed a stipulation in the District Court with the Muñiz Heirs, voluntarily agreeing to the foreclosure of the property. The Trustee argued that these factors and the timing of the conversion request evinces Debtor's status as an atypical Debtor with no real likelihood of rehabilitation. The Debtor argued that the combination of these factors established that the Debtor was acting in bad faith.

The *Motion to Convert to Chapter 11* filed by the Debtor was additionally opposed by the Muñiz Heirs on January 19, 2019 (Docket No. 58). The Muñiz Heirs alleged, essentially, that the Debtor acted in bad faith pre-petition and post-petition. They argued that "conversion to Chapter 11 would not be in the best interest of the creditors. At this stage it would seem that the best interest of the creditors would be best served by this case remaining under Chapter 7. The appearing creditors would not be best served by a Chapter 11 Debtor-in-possession that would be managed by the same person that has failed to pay the appearing creditors for more than 11years, Mr. William Russell. The same person who has failed to come with any business development plan since the LLC Debtor acquired the property back in 2007." Furthermore, on January 22, 2019, the Muñiz Heirs filed their *Opposition to Motion to Set Aside Notice of Abandonment and for Reconsideration under Federal Rule 9024 (Dots No. 28 and 29) and Memorandum of Law in Support Thereof* (Docket No. 59). They alleged that they possess a pre-petition "interest [over the property object of their lien]" under sections 362(b)(3) and 546(b)(1)(A). The federal statutory term "interest in property" is "[][i]nequivalent (sic) to, and broader than," the term "lien." See Soto Rios v. BPPR (1 Cir. 2011) and that "the acts performed to perfect the appearing creditors' security interest post petition, if any, are exempted from the automatic stay pursuant to 362(b)(3) and were performed pursuant to Puerto Rico Mortgage Law to pursue and perfect the appearing creditors' pre-petition interest over the mortgage property. That interest is based in basic principles of the 14th Amendment to the Constitution of the United States."

The Debtor replied both Oppositions to Conversion (Docket Nos. 51 and 66). After several procedural matters, on October 8, 2019, the court entered an *Opinion and Order* denying conversion to chapter 11 (Docket No. 98). After hearing the evidence presented, the court concluded:

> "To move for conversion to chapter 11 in light of the above facts does show extraordinary circumstances which amount to bad faith. The debtor was not able to obtain financing for ten years prior to filing bankruptcy, did not make any payments to the Muñiz under their financing agreement for ten years, was not operating and grossly undervalued the assets it owned. To have filed the request for conversion the next day that the chapter 7 trustee challenged the Muñiz secured status and having

failed to present any evidence as to how it will reorganize, in light of the events leading to having filed a chapter 7 petition is also indicative of bad faith.

The above facts show that in addition to acting in bad faith, the debtor has no reasonable possibility of rehabilitation and may be subject to dismissal or conversion to chapter 7 pursuant to §1112(b). Thus, the Marrama judicial exception is applicable. In addition, the denial of the request for conversion for bad faith meets the equitable remedies in §105(a) as it will allow the chapter 7 trustee to continue to discharge her duties under section 704 of the Bankruptcy Code, mainly: reduce to money the property of the estate in the best interest of parties in interest, and examine proofs of claim and object to them for the purpose of maximizing distribution in accordance with the Bankruptcy Code."[1]

Meanwhile, on November 12, 2018, the Chapter 7 Trustee filed a Complaint and Objection to Claim, Adversary Proceeding No. 21-00127 (Docket No. 81). The Trustee objected proof of claim no. 4 filed by the Defendants the Muñiz Heirs, which included as a basis of its security interest a Mortgage Note and consented judgment of foreclosure, a claim in the amount of $3,918,232.50 as secured. Although the proof of claim included as a supporting document the mortgage note presented for registration in the Property Registry on May 29, 2007, the Registrar notified a fault in the presentation, and the notary failed to correct said fault. Therefore, upon the filing of the petition, there was no valid security interest encumbering the property. The document lost its prepetition ranking, and the lien ceased to exist. "Pursuant to Section 363(p)(2) of the Bankruptcy Code, an entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." However, in this case, the Creditor's alleged security interests were not validly perfected pursuant to Puerto Rico Law and therefore Defendant's alleged liens, if any, are unsecured in at least $2,313,000.00.

"Once abandoned…the Property was no longer property of the estate. Because the Property is no longer property of the estate, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay imposed against the Debtor's Property by section 362(a)(2) and section 362(a)(3) terminated…The stay imposed by section 362(a)(5) and section 362(a)(6), however, continues to apply to any act to create, perfect or enforce a lien against "property of the debtor" … until the case is dismissed or closed, or discharge is granted or denied. In re Vicente, 446 B.R. 26 (Bankr. D. Mass. 2011)".

"…[O]n October 3, 2018, the very same 2007 mortgage deed was willfully and illegally presented in the mortgage on the Property Registry for a second time, despite having full

---

[1] The *Opinion and Order* was appealed to the District Court pursuant to 28 U.S.C. 158(a) (See *Notice of Appeal* at Docket No. 104). The District Court dismissed the appeal on November 10, 2020 (See Dockets Nos. 125 and 126).

knowledge of the filing of Debtor's Chapter 7 voluntary petition." The Trustee alleged that the acts of the Defendants constitute a violation of the automatic stay. Aditionally, the Trustee requested the court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings through Rule 7065 of the Federal Rules of Bankruptcy Procedure, to enter a preliminary injunctive relief and cautionary notice against the Defendant, prohibiting any transaction regarding the Property.

The court notes that while the parties contested the issue of conversion to chapter 11, leading to an *Opinion and Order* on the matter, the *Revocation of Abandonment* was not addressed. Such ruling is critical to the later adjudication of the controversies presented in adversary proceeding 18-0127. The court, therefore, delves the Trustee's request to set aside *Notice of Abandonment* entered at docket no. 11 on July 23, 2018, which became final as of August 4, 2018. The court will not entertain matters related to the property interest of the Muñiz Heirs which is subject to determination in adversary proceeding 18-0127.

Issue

The issue before the court is whether the court should set aside the *Notice of Abandonment* of the property, which was filed by the Trustee on July 22, 2018, and became final on August 4, 2018.

Applicable Law and Analysis

a. *11 U.S.C. §554: Abandonment of Property of the Estate*

"The commencement of a voluntary chapter 7 case establishes a chapter 7 estate to which virtually all property interests of the debtor pass by operation of law. *See* Bankruptcy Code §§ 301, 302, 541(a), 11 U.S.C. §§ 301, 302, 541(a)." United States v. Grant, 971 F.2d 799, 805 (1st Cir. 1992)

Section 554 of the Bankruptcy Code delimits the three (3) forms by which property of the estate may be abandoned. First, section 554(a) provides for the voluntary abandonment of property by the trustee when it is of inconsequential value or burdensome to the estate. Secondly, section 554(b) estates that a party in interest may request the court to order the trustee to abandon any property that is burdensome to the estate or of inconsequential value. Lastly, under Section 554(c) any property not otherwise administered at the time of the closing of a case is abandoned to the

debtor and deemed administered for purposes of Section 350. Furthermore, Fed. R. Bankr. P. 6007 establishes how and to whom Notice of Abandonment shall be given and delimits a 14 days objection period.

"Typically, the trustee initiates abandonment of property of the estate pursuant to section 554, although parties may move to have trustee to abandon property. Since unadministered property is automatically abandoned at the close of the case in any event, except if it has not been disclosed, the impetus for the trustee's abandonment before that time is most often the expense to the estate caused by the particular property." 5 Collier on Bankruptcy P. 554.02. (Richard Levin & Henry J. Sommer eds., 16th ed.).

"Neither the Bankruptcy Code nor Federal Rule of Bankruptcy 6007 specifies the time in which the trustee must act to abandon. The trustee must ascertain the property's fair market value and the amount and validity of the outstanding liens against the property. Under the prior case law, however, the trustee had a "reasonable" time to consider retaining or abandoning an encumbered or otherwise non beneficial asset. The term "reasonable" implies that the period of deliberation is adaptable to the circumstances. The trustee may wait until he or she is able to ascertain whether there is any profit to be expected for the estate. In fact, it may be the duty of the trustee to wait." Id.

The general rule is that abandonment of property divests the trustee of title, and that an abandonment is irrevocable regardless of subsequent unforeseen enhancement in the value of the property. In re Polumbo, 271 F. Supp. 640 (W.D. Va. 1967). The general rule concerning irrevocability "applies rather strictly" when abandonment occurs under section 554(a) or (b). Bank of Am., N.A. v. McCowan, No. 5:18-CV-75-D, 2018 U.S. Dist. LEXIS 174497, at *6-7 (E.D.N.C. Oct. 8, 2018); referencing In re Woods, 173 F.3d at 778; LPP Mortg., Ltd. v. Brinley, 547 F.3d 643, 649 (6th Cir. 2008); In re Reilly, 2013 U.S. Dist. LEXIS 3101, 2013 WL 135179, at *4 ("Assets abandoned pursuant to a notice of abandonment under § 554(a) or (b) are generally considered 'strictly' irrevocable."). "Upon abandonment under section 554, the trustee is divested of control of the property because it is no longer part of the estate. Thus, abandonment constitutes a divesture of all of the estate's interests in the property. Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." 5 Collier on Bankruptcy P. 554.02. (Richard Levin & Henry J. Sommer eds., 16th ed.).

In the present case, the property was abandoned in accordance with section 554(a) of the Bankruptcy Code which provides: "(a) After notice and a hearing, the trustee may abandon any

property of the estate that is burdensome to the estate or that is of inconsequential value to the estate."

In Cusano v. Klein, 264 F.3d 936 (9th Cir. 2001) the court explained that:

> "Generally, "mistakes in valuation will not enable a trustee to recover an abandoned asset," Hutchins, 67 F.3d at 44, not even upon "subsequent discovery that the property has a greater value than previously believed." In re McGowan, 95 B.R. 104, 106 (Bankr. N.D. Iowa 1988); *accord* In re DeVore, 223 B.R. 193, 197 (B.A.P. 9th Cir. 1998) (recognizing the "general rule that abandonment is irrevocable"). Revocation of abandonment is appropriate, however, where "the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset." In re Ozer, 208 B.R. 630, 633 (Bankr. E.D.N.Y. 1997); *accord* In re Adair, 253 B.R. 85, 89 (B.A.P. 9th Cir. 2000); In re DeVore, 223 B.R. at 198."

Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001).

On the other hand, "[t]he debtor has a duty to prepare schedules carefully, completely, and accurately." Id. *referencing* In re Mohring, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992); In re Jones, 134 B.R. 274, 279 (N.D. Ill. 1991); In re Baumgartner, 57 B.R. 513, 516 (Bankr. N.D. Ohio 1986); In re Mazzola, 4 B.R. 179, 182 (Bankr. D. Mass. 1980). "Although there are "no bright-line rules for how much itemization and specificity is required," [the debtor] [] [is] required to be as particular as is reasonable under the circumstances. Id. *referencing* In re Mohring, 142 B.R. at 395. "If the debtor's schedules omit or camouflage an asset, the chapter 7 trustee is disabled from exercising an informed judgment as to whether the debtor had a sufficient legal, equitable, or possessory interest to permit and warrant its liquidation for the benefit of creditors." United States v. Grant, 971 F.2d 799, 805 (1st Cir. 1992).

In Cusano, the court delved into the debtor's schedules to determine if he had provided sufficient information. The court concluded that Cusano's listing was not "so defective" that it would forestall a proper investigation of the asset by the trustee. "… the additional detail would not have revealed anything that was otherwise concealed by the description as it was, which provided inquiry notice to affected parties to seek further detail if they required it. Any undervaluation of the [] asset does not impair Cusano's interest in it, because only an express order of revocation after reopening of the bankruptcy case would do so, and that did not occur."

In In re Flamand, 78 B.R. 644, 645 (Bankr. D.R.I. 1987) the court stated:

> "Abandonment is "simply a declaration by the trustee that the bankrupt estate wants nothing further to do with the property and that the lienors are free to proceed against it just as they normally would under applicable state law." In re Polumbo, 271 F. Supp. 640, 643 (W.D. Va. 1967). After the trustee abandons property, title to that property is treated as if it were never held by the trustee since abandonment relates back to the

filing of the petition. Id. Brown v. O'Keefe, 300 U.S. 598, 602-603, 57 S. Ct. 543, 546, 81 L. Ed. 827 (1937); Rosenblum v. Dingfelder, 111 F.2d 406, 409 (2d Cir. 1940). After abandonment the trustee cannot challenge the disposition of the property, In re Southland Supply, Inc., 657 F.2d 1076, 1082 (9th Cir. 1981), and is precluded from attempting to reclaim the property for the benefit of the estate. In re Yalden, 109 F. Supp. 603, 604 (D. Mass. 1953).

In re Flamand, 78 B.R. 644, 645 (Bankr. D.R.I. 1987)

However, the court in Vasuez v. Adair, 253 B.R. 85 (B.A.P. 9th Cir. 2000) explained:

"The general rule of irrevocability is not absolute and, in DeVore, we acknowledged that courts have discretion to revoke an abandonment in appropriate circumstances. DeVore, 223 B.R. at 198. Revocation of abandonment is appropriate when the trustee is misled by false or incomplete information. Id.; In re Shelton, 201 B.R. 147 (Bankr. E.D. Va. 1996) (revocation of § 554(c) abandonment appropriate where trustee not able to make an informed decision because of inaccurate scheduling of asset); In re Atkinson, 62 B.R. 678 (Bankr. D. Nev. 1986) (exception to irrevocability rule where asset not scheduled or is otherwise concealed from trustee). In considering a motion to revoke abandonment of an asset, it is appropriate to consider the length of time between closure of the case and the request to reopen. 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D § 34:5. See also Atkinson, 62 B.R. at 680 ("Bankruptcy cases must at some point be closed with finality.")."

Vasuez v. Adair, 253 B.R. 85, 89 (B.A.P. 9th Cir. 2000)

In Vasuez, the Bankruptcy Appellate Panel for the Ninth Circuit concluded that the bankruptcy court did not err when rejecting a trustee's argument that the information supplied by debtor and her personal injury attorney was false and misleading at the time it was provided. The court additionally concluded that the debtor did not have an ongoing obligation to provide updated information concerning developments of lawsuits.

Therefore, as discussed herein, there are two principal exceptions to the rule of irrevocability of abandonment. In re Bryson, 53 B.R. 3 (Bankr. M.D. Tenn. 1985). "Property is not deemed abandoned where "the property is unscheduled by the debtor," thus preventing the trustee from having "knowledge or sufficient means of knowledge of its existence." Id. quoting LaRoche v. Tarpley, 4 Bankr. 145, 146 (Bankr. M.D. Tenn. 1980)); In re Medley, 29 Bankr. 84, 86-87 (Bankr. M.D. Tenn. 1983). Furthermore, "property is not deemed irrevocably abandoned if the property "was actually concealed from him (the trustee) or where his knowledge of the existence of the property was one of mere suspicion, which engendered only a cursory investigation."" Id.

The debtor has a duty to accurately disclose all assets when filing schedules. However, as discussed in <u>Vasuez</u>:

> "The trustee has the ability to, in effect, establish his or her own "discovery" rules and timelines with regard to obtaining additional information concerning assets of the estate. A chapter 7 trustee has at least three options. First, the trustee may make an explicit request for additional information. A debtor must comply with such a request in accordance with § 521(3). Second, a trustee may at any time seek a court order allowing him to examine a debtor pursuant to Rule 2004. Finally, a trustee may adjourn the § 341 meeting of the creditors pending the receipt of satisfactory information from the debtor."

> <u>Vasuez v. Adair</u>, 253 B.R. 85, 91 (B.A.P. 9th Cir. 2000).

Nonetheless, "[s]ome courts, including the Court of Appeals for the Tenth Circuit, have held that abandonment can be revoked for equitable reasons." Collier on Bankruptcy P. 554.02. (Richard Levin & Henry J. Sommer eds., 16th ed.). "Courts have permitted revocation of abandonment under Federal Rule of Bankruptcy Procedure 9024, which applies Federal Rule of Civil Procedure 60(b) to bankruptcy proceedings." <u>Bank of Am., N.A. v. McCowan</u>, No. 5:18-CV-75-D, 2018 U.S. Dist. LEXIS 174497, at *6-7 (E.D.N.C. Oct. 8, 2018) referencing <u>Brinley</u>, 547 F.3d at 649; <u>In re Woods</u>, 173 F.3d at 776-78; <u>In re Reilly</u>, 2013 U.S. Dist. LEXIS 3101, 2013 WL 135179, at *4 & n.3; <u>In re Sas</u>, 488 B.R. 178, 184 (Bankr. D. Nev. 2013). Relief under Rule 60(b)(6) is available only in "extraordinary circumstances." <u>Id.</u> referencing <u>Aikens</u>, 652 F.3d at 500-01; <u>Wadley v. Equifax Info. Servs.</u>, LLC, 296 F. App'x 366, 369 (4th Cir. 2008) (per curiam) (unpublished).

### b. *Fed R. Civ. P. 60(b), Made Applicable to Bankruptcy Through Fed. R. Bankr. P. 9024*

Rule 60(b) relief is "extraordinary in nature" and, thus, "motions invoking that rule should be granted sparingly." <u>Fisher v. Kadant, Inc.</u>, 589 F.3d 505, 512 (1st Cir. 2009). A party seeking relief under Rule 60(b) must demonstrate "at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." *Id.*

Although many courts have indicated that Rule 60(b) motions should be granted liberally, the First Circuit has taken a harsher tack. See Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001).

> "Because Rule 60(b) is a vehicle for 'extraordinary relief,' motions invoking the rule should be granted 'only under exceptional circumstances.'" Id. (quoting Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986)). The rule must be applied so as to "recognize the desirability of deciding disputes on their merits," while also considering "the importance of finality as applied to court judgments." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19-20 (1st Cir. 1992). Although these authorities must now be read with the gloss supplied by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993), they still remain instructive."

> Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001).

The Supreme Court has provided guidance, advising that trial courts utilize their equitable powers by weighing the following four factors: (1) the danger of prejudice to the non-moving party; (2) the length of delay and potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. In re Leon, No. 17-06542, 2018 Bankr. LEXIS 1689, at *4-5 (Bankr. D.P.R. June 7, 2018); referencing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (interpreting "excusable neglect" in Rule 9006(b)(1) of the Bankruptcy Rules).

Federal Rule of Civil Procedure 60(b)(1) states that a party may be relieved from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect."

In the present case, the request of the trustee is based on an alleged inadvertence. However, most courts have interpreted the "excusable neglect" component of the rule and frame "inadvertence" as a factor of "excusable neglect". See Pioneer, 507 U.S. at 392 ("Inadvertence, ignorance, or other such excuses "do not usually constitute 'excusable' neglect").

"Deciding what constitutes excusable neglect is a case-specific exercise, which requires "an equitable determination, taking into account the entire facts and circumstances surrounding the party's omission." Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 64 (1st Cir. 2001). "The pertinent facts and circumstances typically include such things as "the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant acted in good faith." Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co., 750 F.3d 1, 4 (1st Cir. 2014). "[T]hese factors are not entitled to equal

weight. "Within the constellation of relevant factors, the most important is the reason for the particular oversight." Id.

Although any FRCP 60(b) motion is addressed to sound discretion of trial court, judicial discretion is especially broad under FRCP 60(b)(6) to accomplish justice. Cobos v. Adelphi Univ., 179 F.R.D. 381, 1998 U.S. Dist. LEXIS 10940 (E.D.N.Y. 1998). Rule 60(b)(6) is a catch-all provision that authorizes the district court to grant relief from judgment for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).Gladu v. Correct Care Sols., No. 2:15-cv-00384-JAW, 2020 U.S. Dist. LEXIS 5361, at *9 (D. Me. Jan. 13, 2020).

Relief under Rule 60(b)(6) is reserved for "extraordinary circumstances" that justify "extraordinary" relief. Roman v. Carrion (In re Rodriguez Gonzalez), 396 B.R. 790, 803 (B.A.P. 1st Cir. 2008), *referencing* Valley Citizens for a Safe Environment v. Aldridge, 969 F.2d 1315, 1317 (1st Cir. 1992). "Courts generally find extraordinary circumstances warranting relief under Rule 60(b)(6) only where the movant was not at fault in his predicament and was unable to take steps to prevent the judgment from which relief is sought." Id. *referencing* 12 James Wm. Moore, Moore's Federal Practice § 60.48 [3][c] (3d ed. 2005) ("fault by movant usually means [a] lack of extraordinary circumstances").

Discussion

The Trustee alleges that her determination to abandon the property "…was driven by the actual liens in the Property Registry upon abandonment. Had the Trustee known of the corrective entry by the Registrar entered nine days after the filing of the notice, the Trustee would not have abandoned the Property. The inadvertence of the Registry's reality after the notice of the abandonment was filed warrants that the Court enters an order setting aside the abandonment pursuant to FRBP 9024." The Trustee fails to state specifically upon which provision of Rule 60 her request is premised. However, she avers that "… given the notification of the Registrar, on July 31st, 2018, the Trustee was not notified of alerted that the Registrar had issued a corrective notification. At that time, the abandonment was not final. If the Trustee had become aware that the mortgage was qualified at the Registry, the Trustee would have waited for the corrections to be made before abandoning the asset. These unusual facts are an **inadvertence** which warrants a relief in the purview of Rule 9024." ***Our emphasis.***

The court initially examines if the debtor made an accurate disclosure of the asset, to determine if one of the two general exceptions to abandonment applies. The court finds that this is not a case of unscheduled property. The debtor disclosed the property at Schedule A/B Assets-Real and Personal Property, Part 9, line 55.[2] Therefore, the Trustee had knowledge of the existence of the property. Furthermore, although the Debtor may have under valued the property in the schedules, the information provided by the Debtor such as location, was sufficient for the Trustee to investigate or assess its true value. The Trustee abandoned the property because the information on record as to the lien, and not because of the value provided by the Debtor. Therefore, the court concludes that the two principal exceptions for revocation of abandonment are not applicable. Consequently, the court must determine if revocation of abandonment is warranted pursuant to Fed. R. Civ. P. 60(b), made applicable to bankruptcy pursuant to Fed. R. Bankr. P. 9024.

Inadvertence is contained within Fed R. Civ. P. 60(b)(1). The Merrier Webster Dictionary defines inadvertence as: (1) the fact or action of being inadvert (2) a result of inattention: oversight. The court concludes that this is not a case of inadvertence but rather a situation of extraordinary circumstances. It was not possible for the Trustee to have knowledge of the internal proceedings of the Property Register or when the review of the documents presented would take place. The Trustee was cognizant of the presentation of the documents in the Registry, which constitutes the initial step for registration. However, when the Registrar notified the defect in presentation and the notary failed to correct it, the presentation of the mortgage automatically lost its rank in the Property Registry. Considering that the property had been abandoned, the property then reverted to the debtor free and clear of the lien. Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed. To determine if abandonment should be revoked, the court must consider the entire facts and circumstances surrounding the Trustee's request to determine if the property should be brought back to the estate. See Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58 (1st Cir. 2001).

The debtor is a corporation who sought chapter 7 bankruptcy relieve to liquidate its assets. This court denied the Debtor's request for conversion to chapter 11. Considering the totality of the circumstances, the court found that the Debtor had not been operating at the time of filing of the

---

[2] The court considered the undervaluation of the properties when determining that conversion to chapter was requested in bad faith, amongst other factors. However, the court notes that the Trustee based her decision to abandon the property by the actual lien presented in the Property Registry and not the under valuation of the Debtor in its schedules.

-14-

chapter 7 petition, it had no employees, and it was not generating any income. Aditionally, the court determined that the Debtor was unable to find financing for ten years prior to filing bankruptcy. Consequently, the Debtor had entered a stipulation in the District Court consenting foreclosure of the property. The court is not persuaded by the Debtor's contention that it will suffer undue prejudice as the court already determined that the Debtor was unable to demonstrate that it could operate and rehabilitate the business. (See *Opinion and Order*, Docket No. 98).

The court additionally notes the following: (1) the Trustee's promptly requested revocation of abandonment when becoming aware of the caducity of the deed presentation in the Property Register; (1) the case remains open as the Trustee is still administering assets; (3) four proofs of claim are filed, therefore, administering the property will benefit all unsecured creditors; and (4) the Trustee was not at fault of the situation and was unable to know or predict what actions the Registrar or the notary would take.

Most of the cases discussed by the court and related to revocation of abandonment pursuant to Section 544(a) portray requests to open already closed cases, and thereon pray for the revocation of abandonment. For the sake of cases finality, these courts have considered if revocation of abandonment is a sufficient cause to reopen already closed bankruptcy cases in specific circumstances. See In re Bryson, 53 B.R. 3, 4-5 (Bankr. M.D. Tenn. 1985). However, in the present case, when revocation was requested, the case remained open, and it still is, as the trustee is still administering property of the estate.

The Notice of Abandonment was entered on July 22, 2018, which became final 14 days thereafter pursuant to Fed. R. Bankr. P. 6007. The request to set aside the abandonment was filed on November 11, 2018, as soon as the Trustee became aware of the Property Registry's situation. The information related to the insufficiency of the presentation was not available when the Trustee decided to abandon the property. Abandonment will prejudice unsecured creditors and limit distribution of the property of estate. The court finds extraordinary circumstances that merit the revocation of abandonment. All the factors considered by the court weight in favor of revocation of abandonment pursuant to Fed. R. Civ. P. 60(b)(6).

## Conclusion

In view of the foregoing, the court finds that the revocation of abandonment entered on November 12, 2018, at docket no. 28 is warranted pursuant to Fed. R. Civ. P. 60(b)(6), made applicable to bankruptcy through Fed. R. Bank. P. 9024; and grants the chapter 7 Trustee's *Motion*

*to set aside Notice of Abandonment and for Reconsideration Under FRBP 9024* filed at docket no. 28.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of October, 2021.

Enrique S. Lamoutte
United States Bankruptcy Judge

-16-